UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ERICA WHITLEY,

                Plaintiff,        17-CV-6664

       v.                      **DECISION**
                                      **and ORDER**
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

---

## **INTRODUCTION**

Plaintiff Erica Whitley ("Plaintiff"), who is represented by counsel, brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner"), denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. ##11, 14.

## **BACKGROUND**

### A. **Procedural History**

On September 14, 2014, Plaintiff filed an application for DIB and SSI alleging disability beginning March 17, 2015, due to anxiety, compulsions, and mental illness. T. 19, 313.[1] Her

---

[1] Citations to "T.___" refer to the pages of the administrative transcript. Dkt. #9.

application was initially denied. T. 155-56. Plaintiff then attended a hearing, with counsel, before Administrative Law Judge ("ALJ") Hope Grunberg. T. 19-31, after which the ALJ found Plaintiff not disabled. T. 16-34, 185-86. The Appeals Council denied review on July 26, 2017, making the ALJ's determination the final decision of the Commissioner. T. 1-4. This action followed. Dkt. #1.

The issue before the Court is whether the Commissioner's decision that Plaintiff is not disabled is supported by substantial evidence and free of legal error. See Pl. Mem. (Dkt. #11-1) 15-20; Comm'r Mem. (Dkt. #14-1) 17-27.

**B. The ALJ's Decision**

In applying the familiar five-step sequential analysis, as contained in the administrative regulations promulgated by the Social Security Administration ("SSA"), see 20 C.F.R. §§ 404.1520, 416.920; Lynch v. Astrue, No. 07-CV-249, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008) (detailing the five steps), the ALJ found: (1) Plaintiff did not engage in substantial gainful activity since March 17, 2015; (2) she had the severe impairments of asthma, obesity, schizophrenia paranoid type, and generalized anxiety disorder; (3) her impairments did not meet or equal the Listings set forth at 20 C.F.R. § 404, Subpt. P, Appx. 1. The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the limitations of avoiding respiratory irritants, understanding

remembering, and carrying out simple routine tasks, no work requiring a high-quota production rate pace, changes should be easily explained and no more than occasional, and occasional interaction with the public, co-workers, and supervisors; (4) Plaintiff was unable to perform her past relevant work as a security guard; and (5) considering Plaintiff's age, education, work experience, and RFC, she could perform the jobs of sorter, hand packager, and assembler, and therefore concluded that Plaintiff was not disabled. T. 19-31.

## DISCUSSION

### A. Scope of Review

A federal court should set aside an ALJ decision to deny disability benefits only where it is based on legal error or is not supported by substantial evidence. Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003) (internal quotation marks omitted).

### B. The RFC Determination was Supported by Substantial Evidence.

Plaintiff first argues the ALJ's mental RFC finding was not supported by substantial evidence because it was not supported by the medical opinion evidence. Pl. Mem. 15. Specifically, Plaintiff challenges the ALJ's treatment of the medical source opinion of Dr. S. Juriga, state agency review psychologist. Id.

Dr. Juriga opined that Plaintiff had mild to moderate difficulties in social functioning and in concentration, persistence, or pace, and could perform at least simple work with a marked restriction in accepting instructions and responding to criticism from supervisors. T. 162-63.

In her decision, the ALJ gave this opinion "little weight, as it is consistent with the aggregate record, as reflected in the [RFC] contained herein." T. 25. Thus, while the ALJ indicated that she gave opinion little weight, she stated that the opinion was consistent with the balance of the record evidence.[2]

Plaintiff argues that it is not clear if the ALJ intended to afford the opinion little weight due to the <u>inconsistency</u> with the aggregate record or intended to afford the opinion greater weight. The Commissioner acknowledges that "the ALJ's statement about how much weight she was affording Dr. Jurgia's opinion is a bit unclear," but posits that the inconsistent statement was a typographical error and the ALJ intended to afford the opinion a greater weight. Comm'r Mem. 18-19.

Here, the ALJ recited the following medical evidence from the record: Plaintiff had normal mental status examination findings during several examinations at Genesee Mental Health Center. T. 27-28. This included repeated examinations by Shanelle Slade,

---

[2] "Generally, the more consistent an opinion is with the record as a whole, the more weight [the Commissioner] will give to that opinion." 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).

MHC, and Anca Seger, M.D., in addition to another psychiatrist and registered nurse. These practitioners observed that she had good eye contact, cooperative attitude, normal speech, and logical thought process, both before and after her alleged onset date. T. 350, 355, 356, 361-62, 363, 364, 366, 368, 371, 377, 380, 399, 404, 410, 434, 439, 440, 443, 467. The records from Genesee also indicate that Plaintiff's memory was intact and that she was having no difficulties with attention or concentration. T. 377, 402, 404, 434. Plaintiff also denied hallucinations, particularly when she was treatment compliant. T. 105, 356, 363, 380, 434. Moreover, she was observed to have normal mood, affect, speech, and judgment as of March, 2016. T. 28.

Notably, the ALJ also gave "some weight" to the opinion of Ms. Slade, Plaintiff's treating counselor, due to its consistency with the aggregate record. T. 29. Ms. Slade assessed moderate limitations in following, understanding, and remembering simple instructions and performing complex tasks independently; maintaining attention and concentration, attending to a routine and maintaining a schedule, and performing short and simple tasks. Id.

The ALJ also observed that Plaintiff's daily activities included caring for her children and traveling to New York City, despite allegedly difficulty being around crowds. T. 27, 354, 361, 363, 413, 414, 457. Plaintiff also reported that her mental medications worked for her, and that she recognized the need to

maintain treatment compliance. T. 27, 105, 118, 121, 361, 363, 364, 401, 450.

The summarized evidence above is consistent with Dr. Juriga's assessed limitations. Thus, read contextually, it is apparent that the ALJ intended to afford the review psychologist's opinion greater than limited weight. Where, as here, an ALJ's decision contains typographical mistakes, the error can be harmless if it is obvious from the decision as a whole that the error is ministerial and not substantive. See Brewerton v. Barnhart, 235 F.R.D. 574, 578 (W.D.N.Y. 2006) (finding only a typographical error where an ALJ stated an "opinion is given significant weight" but from the decision as a whole it was clear the "opinion was not given significant weight"); see also, e.g., Marcille v. Berryhill, No. 17 CV 1620, 2018 WL 5995485, at *11 (D. Conn. Nov. 15, 2018) ("in the context of the ALJ's decision, it is clear that the use of the word 'sedentary' is a typographic error that does not change the outcome of the decision."); Lopez v. Comm'r of Soc. Sec., No. 08-CV-4787, 2009 WL 2922311, at *12 n. 37 (E.D.N.Y. Sept. 8, 2009) (finding the ALJ's reliance on a nonexistent Medical Vocational Rule a "typographical mistake and not a substantive error" where there was no ambiguity considering the ALJ's decision as a whole) (citation omitted). Remand is therefore not warranted on this basis.

Likewise, the Court rejects Plaintiff's related argument that Dr. Jurgia's opinion was "too vague to support an adequate mental RFC finding." Pl. Mem. 17.

Under the regulations in place at the time of the ALJ's decision, a claimant's mental impairment was evaluated on the basis of whether it caused a mild, moderate, marked, extreme, or no limitation in her ability to function. 20 C.F.R. §§ 404.1520a(c)(4) (2016), 416.920a(c)(4) (2016) ("[w]hen we rate the degree of limitation in [functioning caused by a mental impairment], we will use the following five-point scale: None, mild, moderate, marked, and extreme"). Only an extreme limitation "represent[ed] a degree of limitation that [was] incompatible with the ability to do any gainful activity." Id.

Dr. Juriga used these terms to evaluate Plaintiff's mental limitations. T. 160-63. Furthermore, as Plaintiff acknowledges, Dr. Jurgia was the only acceptable medical source that could assess whether Plaintiff had a medically-caused mental impairment. Pl. Mem. 15; see Social Security Ruling ("SSR") 06-03p, 2006 2329939, at *1 (licensed psychologists are acceptable medical sources and the only source among psychologists, counselors, and nurse practitioners, who can provide an opinion regarding whether a claimant has a medically determinable impairment). Accordingly, Dr. Jurgia's opinion that Plaintiff did not have any extreme mental limitations sufficiently supports the ALJ's finding that Plaintiff's mental impairments were not disabling.

Finally, Plaintiff challenges the ALJ's physical RFC finding because it did not reference any medical opinion evidence. Pl. Mem. 19.

The ALJ discussed Plaintiff's physical impairments briefly. T. 26. With regard to asthma, the ALJ observed the "relatively sparse degree of evidence" of "symptomatic manifestations of asthma." T. 26. Plaintiff testified that she has trouble breathing and uses an inhaler once daily, but also smoked cigarettes daily. Id. She did not allege or testify to any limitations relating to her asthma. The ALJ nonetheless concluded that Plaintiff should avoid respiratory irritants, including dust, fumes, odors, gases, and areas of poor ventilation, as part of the RFC finding. T. 25-26. Plaintiff does not point to any evidence which the ALJ may have overlooked with respect to her asthma. See generally, 20 C.F.R. §§ 404.1512(a), 416.912(a) (it is the claimant's burden to provide evidence proving disability). In any event, the RFC accounted for this impairment. See generally, Tankisi v. Comm'r of Soc. Sec., 521 Fed. Appx. 34 (2d Cir. 2013) (summary order) (where "the record contains sufficient evidence from which an ALJ can assess . . . residual functional capacity," a medical source statement or formal medical opinion is not necessarily required).

The ALJ also found Plaintiff's obesity to be a severe impairment at a body mass index ("BMI") of 31.9. A BMI greater than 30.0 generally qualifies as obese. See SSR 02-1p, 2002 WL 34686281, at *2. The ALJ was then required to consider her obesity determination in evaluating Plaintiff's RFC and did so here. See SSR 02-1p, 2002 WL 34686281 at *7. Specifically, she cited the medical evidence pertaining to Plaintiff's weight and "considered

-8-

. . . the impact on her ability to ambulate as well as the effect on her other body systems . . . ." T. 26.

Further, it is worth noting that Plaintiff's initial application for benefits did not allege obesity. T. 157. During the administrative hearing, Plaintiff was not questioned by her attorney regarding her obesity, nor did she claim any work-related limitations with respect to her obesity when questioned by the ALJ. T. 48, 57-60. To the contrary, she testified that she cleaned her house (washing dishes, mopping/vacuuming floors, taking out garbage) for 45-60 minutes each day, T. 52, and told the ALJ that when she was employed as a security guard, she spent the majority of the workday standing or walking. T. 45-46. Even now, Plaintiff points to no record evidence indicating that her obesity, either alone or in combination with other impairments, imposed limitations beyond those identified the RFC determination. See, e.g., Decker v. Colvin, No. 12-cv-1107, 2013 WL 6528845, at *5 (N.D.N.Y. Dec. 12, 2013).

The ALJ in this case was not required to obtain a medical opinion regarding the effects of Plaintiff's obesity or asthma on her ability to work because the record was complete in this regard. See Rosa v. Callahan, 168 F.3d 72, 79 n. 5 (2d Cir. 1999) ("where there are no obvious gaps in the administrative record and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim"); Johnson v. Colvin, 669 Fed. Appx. 44,

46 (2d Cir. 2016) (unpublished) ("because the record contained sufficient other evidence supporting the ALJ's determination and because the ALJ weighed all of that evidence when making his [RFC] finding, there was no 'gap' in the record and the ALJ did not rely on his own 'lay opinion'").

For all of these reasons the Court finds that the ALJ's decision is supported by substantial evidence and free of legal error.

## **CONCLUSION**

For the reasons discussed above, Plaintiff's motion for judgment on the pleadings (Dkt. #11) is denied and the Commissioner's motion (Dkt. #14) is granted. The Clerk of the Court is directed to enter judgment in accordance with this Decision and Order.

ALL OF THE ABOVE IS SO ORDERED.

S/Michael A. Telesca
_____
MICHAEL A. TELESCA
United States District Judge

Dated: Rochester, New York
May 15, 2019